**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WILLIAM M. PEARCE | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 22cv02635-LKG |
| | ) | |
| FRONTIER AIRLINES, INC. | ) | |
| Defendant. | ) | |
| | ) | |

**FRONTIER AIRLINES, INC.'S**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

The Plaintiff in this action, William Pearce, believes that Defendant, Frontier Airlines, Inc. ("Frontier" or "Defendant"), did not hire him for a pilot position because of his age (57 or 58 at the time of his application).  Although Plaintiff initially alleged in his complaint that a Frontier representative indicated in a screening interview that Plaintiff was too old (ECF 1 p. 6), Plaintiff could not testify that the Frontier representative ever actually mentioned age – and Frontier's former representative testified unequivocally that he never mentioned or even knew Mr. Pearce's age and did not treat Mr. Pearce differently from other pilot candidates.  As such, there are no genuine issues of material fact.  Frontier's testimony on the reasons (unrelated to age) Plaintiff was not advanced in the hiring process is uncontested, and Plaintiff has no admissible evidence to support an age discrimination in hiring claim.  Frontier is therefore entitled to judgment as a matter of law.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    Background on Frontier Airlines

Frontier is a passenger air carrier headquartered in Denver, Colorado. Affidavit of Bradley

Lambert ("Lambert Aff.") ¶ 2, attached as Exhibit A. Frontier operates scheduled service to approximately 120 destinations and flies a fleet of 127 Airbus aircraft. *Id.*

**B.   Mr. Pearce's Employment History and Work as a First Officer at Republic**

The Plaintiff, Mr. Pearce, is currently a pilot and first officer for regional carrier Republic Airlines. Deposition of William Pearce ("Pearce Dep."), 11:3-5, excerpts attached hereto as Exhibit B. Mr. Pearce attended the Embry-Riddle Aeronautical University in Daytona Beach, Florida. Pearce Dep. 19:10-13. He did not complete the four-year degree (*Id.* 19:14-19) but did obtain his commercial pilot's license. *Id.* 19:20-22; 20:1-2.  Throughout his career, Mr. Pearce has flown for Federal Aviation Regulation Part 121 passenger carriers US Airways, USA3000 Airlines, and now Republic Airlines. *Id.* 21:1-14. He also flew for CCAir, a Part 135 carrier. *Id.* 22:1-15. During his time with CCAir from 1995-99, Mr. Pearce upgraded from first officer to the captain's seat. *Id.* 22:18-22. He did not upgrade to a captain's seat at USA3000 (or Republic, where he has flown since 2016) when he became eligible due to what he describes as quality of life issues. *Id.* 27:16-22; 28:1-2; 31:16-22; 33:7-22.

While working as a first officer with Republic Airways in 2018, Mr. Pearce experienced an incomplete evaluation in recurrent training. *Id.* 28:21-22; 29:1-3. Specifically, during a maneuvers validation, Mr. Pearce's simulation partner had what Mr. Pearce described as a strong accent and he could not understand him. *Id.* 30:3-12. Mr. Pearce presently remains in the first officer's seat at Republic Airlines and has not upgraded to the captain's seat despite eligibility. *Id.* 31:16-22.  Mr. Pearce withdrew from Republic captain upgrade classes in 2019 to 2020. *Id.* 33:1-10.

**C.     Mr. Pearce's Application for Employment with Frontier**

In or around March of 2021, Mr. Pearce submitted an online application for an airline pilot position at Frontier. Pearce Dep., Exhibit 1 (identified at Pearce Dep. 18:3-20). At the time of application in 2021, Mr. Pearce was in his late 50's. *Id*. 13:20-22; 14:1-2. The application does not inquire into age.  Pearce Dep. Ex. 1; Arellano Dep. 22:6-20 (Exhibit C).  Mr. Pearce was not aware of how many other pilots applied for the pilot position and did not know any other pilots applying for the same position. Pearce Dep. 42:3-12. Mr. Pearce also reached out to Brad Lambert ("Mr. Lambert"), Frontier's Vice President of Flight Operations, who was a pilot with Mr. Pearce at USA3000. *Id*. 43:6-9; Lambert Aff. ¶¶ 3-4.  Mr. Pearce felt that Mr. Lambert's initial response seemed positive and encouraging. Pearce Dep. 72:9-17.

**D.     Frontier's Concerns With Mr. Pearce's Application**

Gerardo Arellano ("Mr. Arellano") is currently the Director of Pilot Outreach, Recruitment, and Selection for Delta Professional Services, which provides flight instruction for Delta Airlines pilots. Deposition of Gerarado Arellano ("Arellano Dep.") 7:4-8, excerpts attached as Exhibit C. Mr. Arellano previously served as Senior Manager of Talent Acquisition for Frontier Airlines. Arellano Dep. 7:18-21. In this position, Mr. Arellano was involved in the screening and hiring of flight crews and pilots. *Id*. 7:18-25; Lambert Aff. ¶ 5.

Mr. Arellano was tasked with reviewing Mr. Pearce's application in 2021. Arellano Dep. 11:9-11. At the time of review, Mr. Arellano did not know or ask about Mr. Pearce's age. *Id*. 14:17-19; *see also* Pearce Dep. 62: 10-14. After reviewing his application, Mr. Arellano had concerns regarding Mr. Pearce's total flight time as well as Mr. Pearce's explanation regarding a training incident in the application addendum. Arellano Dep. 13: 13-25; 17:14-25. Specifically, when asked in the application to disclose any and all check rides, stage checks, line checks, proficiency checks

3

or any other training event failed or not satisfactorily completed, Mr. Pearce detailed an incident where he blamed a failed maneuver test on an accent barrier with his training partner -- rather than taking accountability for his contribution to the situation. *Id*. 14:2-6; Pearce Dep. Ex. 1, p. 9.[1] Mr. Arellano was also uneasy with Mr. Pearce's high flight hours in only a first officer position. *Id*. 15:5-18. Mr. Arellano was concerned that Mr. Pearce had high flight hours but had not upgraded to the captain's seat despite being at Republic for several years. *Id*. This concern over the high number of flight hours was based on the experience within Frontier's training department that, with such high flight hours, it is more difficult for pilot candidates to transition and learn the different and more difficult type of training offered at Frontier. *Id*. 37:5-20.

   Mr. Arellano still conducted a phone interview with Mr. Pearce to screen him for the first officer position on or about March 20, 2021. *Id*. 12:13-18. During the call, Mr. Pearce shared the more personal part of his career and interests before they began discussing his application. *Id*. 16:9-16. Next, Mr. Arellano questioned Mr. Pearce about Frontier and his goals for joining Frontier. *Id*. Ultimately, Mr. Arellano felt that Mr. Pearce's responses to targeted questions about Frontier were general responses and did not provide insight into why he wanted specifically to join Frontier. *Id*. 16:17-25. Mr. Arellano and Mr. Pearce then discussed his flight hours, but at no time did they discuss his age. *Id*. 17:3-13. This is when Mr. Arellano expressed his concerns regarding his high number of flight hours. Pearce Dep. 58: 15-25; 59: 1-2. According to Mr. Pearce, Mr. Arellano explained that Frontier preferred pilots with under a 7,000-7,500 flight hour experience threshold.  *Id*. 58:13-22; 59: 1-12; *see also* Arellano Dep. 15:19-24.

---

[1] Mr. Pearce also identified an earlier training failure where he claimed that all of the pilots failed on the first ride.  *Id*.

Mr. Arellano never asked about nor did he know Mr. Pearce's age, nor did he ever say or believe that Mr. Pearce's age would be an impediment to his application.  Arellano Dep. 14:17-21; 17:9-13; 19:1-2.  Mr. Pearce, too, could not testify that Mr. Arellano ever mentioned or asked about his age during the screening interview. Pearce Dep. 62: 10-17; 75: 20-22; 76: 1-5.  Mr. Pearce simply *assumed* that when Mr. Arellano referred to his concerns over flight hours, he must have meant age.  *Id.* 62:15-22; 76: 1-18; 79: 14-21.

Frontier did not advance Mr. Pearce to the next interview stage in the pilot hiring process. Lambert Aff. ¶ 7; Arellano Dep. 18:11-15.  Mr. Arellano did not believe that Mr. Pearce's general responses on why he wanted to join Frontier indicated that he would be a good fit with the company.  Arellano Dep. 16:17-25; 17:1-2.  He felt that Mr. Pearce did not take accountability over his training mishap, and that Mr. Pearce's flight hours without upgrading were troubling.  *Id.* 17:14-25; 18:14-20.  Mr. Arellano shared his concerns over Mr. Pearce's unsuitability as a pilot candidate with Mr. Lambert.  Arellano Dep. 18:1-15; 21:3-16; Lambert Aff. ¶ 6.  Mr. Lambert agreed and respected Mr. Arellano's judgment and reasoning.  Lambert Aff. ¶ 7.  Frontier did not decline to hire Mr. Pearce because of his age.  Lambert Aff. ¶ 8; Arellano Dep. 18:21-25.  Rather, Frontier decided not to advance Mr. Pearce in the pilot hiring process because of concerns over his high flight hours without upgrading to captain, his unwillingness to accept accountability over his training failure at Republic, and Frontier's sense that Mr. Pearce was just "looking for a job" instead of articulating a real interest in Frontier and its culture.  Arellano Dep. 18:6-20; Lambert Aff. ¶ 6. During the relevant time period, however, Frontier did hire nearly 75 other first officer pilot candidates in the same age range as Mr. Pearce.  Lambert Aff. ¶ 9; Arellano Dep. 22:3-10;

23:1-6.[2]  Mr. Pearce nonetheless brings this age discrimination action against Frontier, grounded in Mr. Pearce's personal belief that Frontier did not hire him because of his age.  *E.g.*, Pearce Dep. 76:2-18. He cannot support his claims.

## III.    ARGUMENT

### A.    Standard of Review

The summary judgment standards under Rule 56 of the Federal Rules of Civil Procedure are well-established. Once the moving party demonstrates that no genuine issue of material fact exists, the non-moving party must go beyond the pleadings and come forth with sufficient proof to establish the elements of the party's case upon which that party must prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The mere existence of a minor factual dispute will not preclude summary judgment if there is no "genuine" issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Any disputed facts must be *material*, meaning they must be facts that might affect the outcome of the claim under governing law. *Id.* at 249. "[T]he non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252). This evidence must come in the form of corroborated evidence that will be admissible in Court; self-serving, unsubstantiated statements and personal beliefs without more are not sufficient to overcome summary judgment. *E.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403 (4th Cir. 2022) ("[A]a nonmovant's 'own self-serving, unsubstantiated statements in opposition to [the movants'] evidence . . . is insufficient to stave off summary judgment.'" (quoting *Wadley v.*

---

[2] Mr. Arellano explained that the pilot candidate's age only becomes known after the individual is hired.  Arellano Dep. 22:6-24.

*Park at Landmark LP*, 264 F. App'x 279, 281 (4th Cir. 2008) (per curiam), *cert. denied*, 143 S.

Ct. 364 (2022)). Speculative testimony from an employee about an employer's motive, as here,

does not create a genuine issue of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

888 (1990). If the entire record could not allow a rational fact finder to find in favor of the non-

moving party, then there is no genuine issue to be resolved at trial. *See Matushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.     Mr. Pearce Has Not Provided Direct Evidence of Discrimination and the McDonnell Douglas Standard, Which Mr. Pearce Cannot Meet, Applies.

As Mr. Pearce has no direct evidence of age discrimination, the Court must follow the

burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See EEOC v. Mfrs. & Traders Trust Co.*, 402 F.Supp.3d 201, 229 (D. Md. 2019).   ADEA

discrimination claims apply the same burden shifting evidentiary scheme as Title VII cases when

there is no proffer of direct evidence, with the exception that Mr. Pearce must prove causation

under the more stringent "but for" analysis. *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177

(2009); *Arthur v. Pet Dairy*, 593 F. App'x 211, 219 (4th Cir. 2015) (collecting cases holding that

the ADEA's "but for" standard is more demanding than Title VII's "motivating factor" standard);

*see also Kosak v. Cath. Health Initiatives of Col.*, 400 F. App'x 363, 365 (10th Cir. 2010).[3]

Should a plaintiff succeed at establishing a *prima facie* case, the employer may then

provide a legitimate nondiscriminatory reason for the adverse employment action, as Frontier has

done. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019). Once such a reason

is proffered, the plaintiff then must "be able to point persuasively to some other form of evidence

demonstrating that the employer's explanation was a mere pretext for discrimination." *Laing v.*

---

[3] The facts and adverse actions Plaintiff alleges in his Complaint occurred within the Tenth Circuit, where Frontier is headquartered and where the hiring decisions took place.

*Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2013). This means that the plaintiff must "establish that the proffered reason is false, and second, plaintiff must establish that the alleged form of discrimination was the real reason." *Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 525 (E.D. Va. 2013), *aff'd*, 603 F. App'x 173 (4th Cir. 2015). The ultimate burden to prove discrimination remains with the plaintiff at all times. *Westmoreland*, 924 F.3d at 726.

To establish a *prima facie* case of discriminatory failure to hire, "a plaintiff [in the protected class] must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which give rise to an inference of unlawful discrimination." *See Laul v. Los Alamos National Laboratories*, 714 Fed. Appx. 832, 839 (10th Cir. 2017)(quoting *Anaeme v. Dignostek, Inc.*, 164 F.2d 1275, 1278 (10th Cir. 1999)). At the *prima facie* stage, "a plaintiff must show that he satisfied an employer's objective qualifications." *Laul*, 164 F. 2d at 839. Here, Mr. Pearce has no evidence establishing what Frontier's qualifications were for the first officer position. *Green v. City of St. Louis*, 507 F.3d 662, 667 (8th Cir. 2007); *see, e.g.*, *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1137 (10th Cir. 2004) (concluding that the plaintiff could not establish a *prima facie* case of discriminatory failure to promote without evidence "suggesting what the [employer's] qualifications for its [position] might have been"). Moreover, Mr. Pearce cannot demonstrate that he was qualified for the first officer position based on Frontier's qualification criteria.[4] Specifically, for the first officer position, Mr. Pearce had high flight hours without an upgrade to the captain's seat, something that Frontier found troubling. Not only this, but Frontier found that Mr. Pearce did not take accountability for a failed maneuver validation and provided general responses to targeted questions about his interest in Frontier.

---

[4] Frontier does not suggest that Mr. Pearce is not qualified to perform as a commercial pilot at Republic. Instead, Frontier suggests that he was not qualified for its first officer position based on concerns identified during the interview process.

While Mr. Pearce has not presented any evidence demonstrating that he was qualified or what Frontier's qualifications were, Frontier's own proffered evidence demonstrates that he was not qualified for the first officer position at Frontier.

Mr. Pearce also cannot show that he was rejected under circumstances giving rise to unlawful discrimination. While Mr. Pearce *assumed* that Frontier rejected him based on his age, the record demonstrates that it did not. Mr. Pearce cannot point to any testimony or document produced in discovery showing that Frontier indicated that his age was the reason for rejection of his application. While Frontier referenced his flight hours, this reference does not directly correlate to age, as discussed below in Argument C. Instead, Frontier referenced Mr. Pearce's flight hours based on its concern that they were significant, yet he had not upgraded to the captain's seat. As Mr. Pearce cannot satisfy two elements of a *prima facie* case of discriminatory failure to hire, his claim must fail.

Should the Court find, however, that Mr. Pearce can establish a *prima facie* case of age discrimination or discriminatory failure to hire, and he cannot, the uncontroverted testimony demonstrates that Frontier articulated three non-age-related reasons for not hiring Mr. Pearce: (1) failure to take accountability over a recurrent training failure, (2) undesirably high flight hours and failure to upgrade to captain, and (3) a lack of specific interest in Frontier. Arellano Dep. 16:17-25; 17: 1-2; 17:14-25; 18:14-20; Lambert Aff. ¶ 6. None of the testimony indicates that Frontier considered Mr. Pearce's age, nor does it demonstrate that Frontier was even aware of his age at the time of the screening interview. Consequently, Mr. Pearce cannot shoulder his burden to demonstrate that "but for" his age, Frontier would have hired him as a pilot.

Nor is there evidence that Frontier's proffered and non-discriminatory reasons for not advancing Mr. Pearce are pretextual. This is amplified by the fact that Frontier hired pilots of

comparable age during the same time frame of Mr. Pearce's application. Lambert Aff., ¶ 9 (Exhibit A). Accordingly, Mr. Pearce's age discrimination claim fails in its entirety.

      **C.**    **Mr. Pearce Cannot Establish Disparate Impact Based on a Comment Regarding Flight Hours.**

While Mr. Pearce did not specifically plead disparate impact in his Complaint (equating high flight hours with age, which is an imperfect correlation),[5] such claims would fail. An external applicant cannot make a disparate impact claim under the ADEA based on the precedent established in *Kleber v. Fusion Corp.*, 914 F.3d 480 (7th Cir. 2019) (en banc), *cert denied* 140 S.Ct. 306 (2019); *see also Raymond v. Sprit AeroSystems Holdings, Inc.*, 2017 WL 2831485 (D. Kan. June 30, 2017); *Fulghum v. Embarq Corp.,* 785 F.3d 395, 422 (10th Cir. 2015) (Defendant's decision to reduce or terminate the group life insurance benefit was based on a reasonable factor other than age where defendants "presented evidence the change . . . was motivated by a desire to reduce costs and bring life insurance benefits in line with those provided by other companies").[6] In *Kleber*, an external applicant applied for a position where the job description required 3-7 years—and no more than 7—of relevant experience. *Id*. There, the Court found no disparate impact because the 3–7-year experience requirement did not translate directly to age. Here, the Court should find the same with respect to Frontier's purported 7000-to-7500-flight hour threshold alleged by Mr. Pearce. Mr. Pearce therefore cannot support his age discrimination claim.

---

[5] Mr. Arellano testified and explained that a pilot candidate's flight hours do not necessarily translate to age.  Arellano Dep. 24:24-25; 25:1-16.

[6] Again, the adverse actions Plaintiff alleges in his Complaint occurred within the Tenth Circuit.

## IV.    CONCLUSION

For the foregoing reasons, Defendant, Frontier Airlines, Inc. respectfully requests that the Court grant summary judgment in its favor and dismiss with prejudice Plaintiff's age discrimination claims, and such further relief as this Court deems proper.

Dated:  August 23, 2023                          Respectfully submitted,


                                         */s/ Peter J. Petesch*
                                         Peter J. Petesch (Bar No. 12908)
                                         ppetesch@littler.com
                                         Alexis Bosilovic (Bar No. 21877)
                                         abosilovic@littler.com
                                         815 Connecticut Avenue, NW, Suite 400
                                         Washington, DC  20006-4046
                                         202.789.3434  (Telephone)
                                         202.842.0011 (Facsimile)

                                         *Counsel for Defendant Frontier Airlines,*
                                         *Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 23rd day of August, 2023, a copy of the foregoing Defendant

Frontier Airlines Inc.'s Memorandum in Support of Its Motion for Summary Judgment was filed

using the CM/ECF system and served by first-class mail, postage prepared, upon the following:

>	William M. Pearce
>	2334 Sheppard Road
>	POB 576
>	Monkton, Maryland 21111
>	*Pro Se* Plaintiff


>	  */s/ Peter Petesch*
>	Peter Petesch