## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **WILLIAM M. PEARCE,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No.: MJM-22-2635** |
| **v.** | * | |
| | * | |
| **FRONTIER AIRLINES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter is before the Court on Defendant Frontier Airlines, Inc.'s ("Frontier") Motion for Summary Judgment ("the Motion"). The Motion is ripe for disposition and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court will grant the Motion.

## I.    FACTUAL BACKGROUND

Pearce is a pilot and first officer for Republic Airlines ("Republic"), a regional airline. Deposition of William Pearce ("Pearce Dep."), 11:3–5. Pearce attended the Embry-Riddle Aeronautical University in Daytona Beach, Florida. *Id.* at 19:10–13. He did not complete the four-year degree but did obtain his commercial pilot's license. *Id.* at 19:14–22; 20:1–2. Before flying for Republic, Pearce flew for US Airways, USA3000 Airlines, and CCAir. *Id.* at 21:1–15. During his time with CCAir, Pearce was promoted from first officer to captain. *Id.* at 22:18–22. However, Pearce was not upgraded to captain at USA3000, nor at Republic, where he has worked since 2016. *Id.* at 27:2–21; 31:6–22. Pearce says he did not wish to become captain at USA3000 because of

"quality of life" concerns, *id.* at 27:22–28:2, and that in 2019 or 2020 he withdrew from Republic's captain upgrade classes due to untimely deaths in his family, *id.* at 33:2–22.

In 2018, Pearce experienced an incomplete evaluation during an annual training. *Id.* at 28:21–29:3. Pearce blamed this on his simulation partner, who had "an incredibly thick Eastern European accent" that made it difficult for Pearce to understand him. *Id.* at 30:3–10. Pearce testified that he later redid the simulation with another partner and completed it without issue. *Id.* at 30:10–12.

Frontier is a passenger air carrier headquartered in Denver, Colorado. Affidavit of Bradley Lambert ("Lambert Aff."), ¶ 2. In February 2021, Pearce reached out to Brad Lambert ("Lambert"), Frontier's Vice President of Flight Operations, with whom Pearce had worked as a pilot at USA3000, about the possibility of becoming a pilot at Frontier. *Id.* ¶¶ 3–4. In March 2021, Pearce submitted an online application for an airline pilot position at Frontier. Pearce Dep. at 18:2–20; 72:10–18. At the time of application in 2021, Pearce was in his late 50's. *Id.* at 13:20–14:2.

Gerardo Arellano ("Arellano") was, at all relevant times, Senior Manager of Talent Acquisition for Frontier. Deposition of Geraldo Arellano ("Arellano Dep."), 7:4–21. In this position, Arellano was involved in the screening and hiring of flight crews and pilots. *Id.* at 7:18–25; Lambert Aff., ¶ 5. Arellano was assigned to review Pearce's application in 2021. Arellano Dep. at 11:9–11. At that time, Arellano did not know Pearce's age. *Id.* at 14:17–19 ("Mr. Pearce's age is not contained anywhere in his application."). After reviewing Pearce's application, Arellano had concerns regarding his inability to take any responsibility for the 2018 training incident. *Id.* at 13:6–14:16. Arellano was also concerned that Pearce had not upgraded to the captain seat at either Republic or USA3000 despite his high flight hours. *Id.* at 14:22–15:24. This concern over the high

number of flight hours was based on the perception within Frontier that pilots over a certain threshold of hours are more difficult to train. *Id*. at 37:5–20.

In late March 2021, Arellano conducted a phone interview with Pearce to screen him for a pilot position with Frontier. *Id*. at 12:13–18. During the call, Arellano asked Plaintiff questions about his reasons for seeking to join the airline. *Id*. 16:9–16. Arellano found Pearce's responses to questions about "why Frontier" to be very general and not specific to the company. *Id*. at 16:17–17:2. Arellano also felt that Pearce had failed to learn from the 2018 training incident. *Id*. at 17:14–25. Near the end of the conversation, Arellano and Pearce discussed his high flight hours. *Id*. at 17:3–8. At this point, Arellano told Pearce that Frontier preferred pilots who did not have more than 7,000 to 7,500 flight hours. Pearce Dep. at 58:13–59:12

Arellano shared with Lambert his concerns regarding Pearce's lack of accountability, high hours without being made captain, and general interview responses. Arellano Dep. at 18:1–20; Lambert Aff., ¶ 6. Lambert could have overridden Arellano's decision but chose to follow his recommendation to not move Pearce forward. Lambert Aff., ¶ 7.

## II.    PROCEDURAL BACKGROUND

William Pearce ("Pearce") filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or about October 27, 2021, and he received his EEOC right-to-sue letter on July 15, 2022 (ECF 1-1). Pearce then filed his Complaint (ECF 1) pro se on October 13, 2022, to which Frontier filed its Answer (ECF 9) on January 3, 2023. Following close of discovery, Frontier filed a Motion for Summary Judgment on August 23, 2023 (ECF 22), to which Pearce filed a response in opposition (ECF 27) and Frontier filed a reply (ECF 28). With leave of the Court, Pearce filed a supplemental memorandum in opposition to the Motion (ECF 32) and Frontier filed a response (ECF 35).

3

## III.     STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

## IV.     ANALYSIS

In his Complaint, Pearce alleges discriminatory failure to hire based on age, in violation of the Age Discrimination in Employment Act ("ADEA"). The ADEA prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least forty

4

years of age "because of" the person's age. 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff bringing a claim under the ADEA must "demonstrate that the employer engaged in disparate treatment because of the [plaintiff's] age and, accordingly, age must be the but-for cause of such treatment." *EEOC v. Balt. Cnty.*, 747 F.3d 267, 273 (4th Cir. 2014).[1]  This discriminatory animus may be shown directly or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tighe v. Bae Sys. Tech. Sols. & Servs. Inc.*, Civ. No. CCB-14-2719, 2016 WL 1571113, at *2 (D. Md. Apr. 19, 2016).

### A.  Direct Evidence

Direct evidence proves the existence of age discrimination without the need for any inferences or presumptions in the plaintiff's favor. *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (internal quotation marks and citation omitted), *rev'd on other grounds by* 517 U.S. 308 (1996). To establish discrimination by direct evidence, a plaintiff "must produce evidence that clearly indicates a discriminatory attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action." *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 202 (4th Cir. 2018) (citation omitted).

Here, the only evidence of discriminatory animus Pearce offers is his own testimony that his age was discussed during his phone interview with Arellano.  During his deposition, Pearce testified as follows: "[Arellano] was very clear about it, he goes: The pilot review hiring committee, for whatever their reasons are, believe that people with your flight time—and one of

---

[1] Though Pearce attempts to bring a disparate impact claim on the basis that "there is a direct correlation between flight hours and age" that "is scientifically provable[,]" ECF 27 at 3, he cannot do so. Disparate impact claims are available under 29 U.S.C. § 623(a)(2), but only to employees, not to outside job applicants. *See Kleber v. CareFusion Corp.*, 914 F.3d 480, 484–85 (7th Cir. 2019) (en banc) (rejecting ADEA disparate impact claim based on the failure to hire an outside applicant); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016) (en banc) (same); *Raymond v. Spirit Aerosys. Holdings, Inc.*, 406 F. Supp. 3d 996, 1000–01 (D. Kan. 2019) (following *Kleber* and *Villarreal*).

the times [Arellano] said age, but it was mostly just flight time—they will not consider you because of your—your—the amount of flight time." Pearce Dep. at 61:3–9. However, Pearce later testified that Arellano never asked for his age, nor did Pearce volunteer it. Pearce Dep. at 62:10–14. When asked whether Arellano ever said his age was a concern, Pearce responded that Arellano did so "[i]ndirectly," explaining that a pilot "can very easily correlate [total flight hours] to an age approximation." *Id.* at 62:15–63:3. Further in the deposition came the following exchange:

> Q. Did – did – did Mr. Arellano ever use the term age in your conversation?
> A. I believe in one of the circling backs he – I believe he might have, yes.
> Q. Okay. You can't say definitively whether he –
> A. No.
> Q. – said age?
> A. But it was – the intent is very clear.
> Q. Well, you inferred, based on flight hours, that he meant years of experience –
> A. Jerry's statements was –
> Q. That he meant years of experience and/or age?
> A. Yes. And that derived from the number of flight hours. His words were, well, I'm looking at your flight time. Here's the rub, or something to that effect . . . .
> [Q.] It was your inference that in referring to flights hours he was referring to age?
> A. Yes, absolutely . . . .

*Id.* at 75:20–76:16, 79:18–22. Considered as a whole, Pearce's testimony indicates that, in his own view, Arellano's discussion of Pearce's flight time was an indirect reference to his age.[2]

For his part, Arellano testified consistently during his deposition that he did not know Pearce's age and that it never came up as a matter of discussion. Arellano Dep. at 14:17–19; 17:9–

---

[2] Pearce presents two emails to bolster the proposition that his age was discussed during the interview with Arellano. In an email Pearce sent Lambert after the interview, Pearce states, in part, that Arellano "shared that my flight time and age could be a problem[.]" ECF 27-3. An email Pearce received from a friend in May 2021 about a phone conversation the two shared after the interview states that Pearce learned during the interview that pilots with "more than 7000/7500 hours of flight time . . . were considered too old and untrainable." ECF 27-2. Such hearsay statements cannot be offered to create a dispute of fact sufficient to overcome summary judgment. *See Stanton v. Elliott*, 25 F. 4th 227, 237 n.7 (4th Cir. 2022) ("[I]nadmissible hearsay cannot create a factual dispute."). Moreover, in light of Pearce's and Arellano's deposition testimony, the foregoing hearsay statements only reflect Pearce's interpretation of Arellano's references to flight time and not actual discriminatory animus on part of anyone at Frontier.

13; 18:21–19:2; 22:6–10; 37:11–15. ("We never discussed age. I still do not know how old you are and had not ever seen you because this was a phone call."). As to the relevance of flight time, Arellano explained that a high number of flight hours without attaining "the captain's seat" would rise to a concern about the reason for the applicant's failure to be upgraded. *Id.* at 15:5–18. Clearly, age and flight hours are not the same.

Pearce's inconsistent testimony is insufficient to create a genuine issue that Arellano or anyone at Frontier involved in the decision not to hire him expressed any discriminatory attitude toward the plaintiff based on his age. *See Church v. Maryland*, 180 F. Supp. 2d 708, 743 (D. Md. 2002), *aff'd*, 53 F. App'x 673 (4th Cir. 2002) (declining to credit plaintiff testimony where she failed to "explain or reconcile [] glaring inconsistencies"). Accordingly, the Court finds that Pearce has failed to present adequate direct evidence of age discrimination to overcome summary judgment.

### B.  *McDonnell Douglas* **Framework**

Where there is no direct evidence of discrimination, a plaintiff may still proceed under the burden-shifting framework of *McDonnell Douglas*. *See McDonnell Douglas*, 411 U.S. at 802–03. To establish a prima facie case of discriminatory failure to hire, a plaintiff must demonstrate that "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Loose v. CSRA Inc.*, Civ. No. 19-2394, 2021 WL 4452432, at *2 (4th Cir. Sept. 29, 2021) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)). If a prima facie case is made, the burden then shifts to the employer to provide evidence that its reason for taking the adverse employment action was legitimate and nondiscriminatory. *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (citations omitted). In order

to overcome an employer's proffered legitimate, non-discriminatory reason, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant-employer were not its true reasons, but were a pretext for discrimination." *Westmoreland*, 924 F.3d at 726 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

When an employer puts forth a legitimate reason for its adverse employment decision, the prima facie case analysis may be sidestepped altogether. *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 120 (D. Md. 2019) (citing cases of the Fourth Circuit where the court "assumed, without deciding, that the plaintiff established a prima facie case"); *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) ("Once the employer asserts a legitimate, non-discriminatory reason, the question of whether the [plaintiff] actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture.") (cleaned up). In this circumstance, the court may proceed to considering whether an adequate showing has been made that the employer's nondiscriminatory reason was pretextual and that the employer intentionally discriminated against the plaintiff based on a protected classification. *Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d at 120.[3] The plaintiff maintains the burden of persuasion throughout this process. *Id.* (citing *Burdine*, 450 U.S. at 253).

Here, Frontier proffers three legitimate, non-discriminatory reasons for declining to hire Pearce: his high number of flight hours without being made captain, a perceived failure to take accountability for the 2018 training incident, and overly general answers as to why he wanted to join Frontier. ECF 22-1 at 5; Arellano Dep. at 18:1–20. Arellano testified that he recommended

---

[3] In its reply, Frontier states "[g]iven that Frontier proffered legitimate reasons for not advancing Mr. Pearce in the hiring process, it may be presumed that the prima facie case has been met and the Court may move on to that 'ultimate issue.'" ECF 28 at 3–4.

that Pearce's application be held and not moved further through the recruitment process based on a combination of the foregoing reasons. *Id.*

Pearce fails to offer any evidence to create a genuine issue that Frontier's reasons for its decision not to hire him were a pretext for age discrimination. He argues that Arellano was incorrect to assert that pilots with higher hours are harder to train, that he failed to take accountability, and that he lacked enthusiasm to work for Frontier, ECF 27 at 2–3, but it is not the role of the Court to question an employer's lawful and non-discriminatory hiring decisions. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[T]his Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination . . . .'") (citation omitted); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not . . . the function of this court to second guess the wisdom of business decisions."). Pearce has presented no evidence that suggest Frontier's reasons for declining to hire him were pretextual or that its true reasons were based on his age. Accordingly, his age discrimination claim must fail.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF 22) is GRANTED. A separate Order will follow.

  6/7/24
Date

_____
Matthew J. Maddox
United States District Judge